# EXHIBIT A

# Merchant Processing Agreement

Please review the information below and sign where required.

---

## ☐ 1. Business Information

**Legal Business Name**

> **Attorney For Tenants LLC**

**Tax Filing Name**

> **Attorney For Tenants LLC**

**DBA/Outlet Name**

> **Tenants Rights Netwok**

**TIN Type**

> **EIN (Fed Tax ID #)**

**Fed Tax ID #**

> **XXXXX2550**

**Foreign Entity/Nonresident Alien**

> **NO**

**Business Address**

> **1900 JFK BLVD 1412**

**City**

> **PHILADELPHIA**

**State**

> **PA**

**Mo/Yr The Business Started**

> **07-2024**

**Organization Type**

> **Limited Liability Company (LLC)**

**Method of Receiving Notice of Chargebacks and Retrievals**

> **Dispute Manager Online**

**Product/service fulfillment**

> **Direct**

**Third party to store, process or transmit cardholder data**

> **NO**

**Software used for storing, transmitting, or processing card transactions or authorization requests**

> **N/A**

**Merchant Identifier**

> ▮▮▮▮▮▮▮▮

ZIP

**19103**

Business Phone

**2155691944**

State Organized

**PA**

## ☐ 2. Owner Information

You provided the following information for each individual who owns, directly or indirectly, 25% or more of the equity interest of ATTORNEY FOR TENANTS LLC , as well as identify the controlling individual defined as an individual with significant responsibility for managing the legal entity customer (e.g., a Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Managing Member, General Partner, President, Vice President, or Treasurer).

### Owner 1

Owner/Partner/Officer Name

**Allan Marshall**

D.O.B

**XX-XX-**

Social Security Number

**XXXXX**

Ownership %

**100%**

Title

**CEO**

Home Address

City

State

ZIP

Home Phone

Email

███████████████

Mobile Phone

████████

Controlling Individual

**Yes**

---

# ☐ 3. Locations

## Location 1

DBA/Outlet Name

**Tenants Rights Netwok**

Location Phone

**2676480452**

Location Address

**1900 JFK BLVD 1412**

Contact First & Last Name

**Allan Marshall**

City

**PHILADELPHIA**

Contact Email address

**akm6940@gmail.com**

State

**PA**

Location Zip

**19103**

Products/Services you sell

**Legal Services Attorneys**

**Time frame from transaction to delivery**

0 days

**100%**

1-7 days

**0%**

8-14 days

**0%**

15-30 days

| 0% |
|---|

31+ days

| 0% |
|---|

## Financial Data

| TOTAL ANNUAL VOLUME | |
|---|---|
| Average Sale Amount | **$500.00** |
| Credit Card Volume | **$300,000.00** |

| TRANSACTION TYPE | |
|---|---|
| Card Present | **0%** |
| Internet | **0%** |
| Mail Order / Direct Marketing / Phone Order | **100%** |
| SWIPED VS. KEYED | |
| Swiped | **0%** |
| Keyed | **100%** |

## Processing Rates & Fees

The following pricing will apply to all transaction types unless otherwise noted in this agreement. The discount rates (the percentage rates reflected below) are charged on the gross sales transactions that you submit (without reduction for returns or chargebacks). The transaction fee (the fixed charge per transaction reflected below) will be charged on all sales and refunds that you submit.

| | DISCOUNT RATE + TRANSACTION FEE |
|---|---|
| Swiped or Dipped | ██████████ |
| Non-Swiped or Non-Dipped | ██████████ |

## Banking & Funding Information

ABA #

| **XXXXX**██ |
|---|

DDA #

| **XXXXX**██ |
|---|

Deduct Fees

| **Monthly** |
|---|

Bank Will Fund

| **Outlet** |
|---|

## Equipment Details

| MODEL CODE AND NAME | UNIT PRICE W/O TAX AND S&H | QTY | PURCHASE TYPE | EQUIPMENT TYPE | INDUSTRY TYPE |
|---|---|---|---|---|---|
| Clover Account |  | 1 | Purchased | IBUNDLE | MOTO |

## Clover Software Plan

### CLOVER SOFTWARE PLAN

Clover software plans are billed separately through the Clover App Market. If you move to a new software plan in the Clover Dashboard, your monthly billing may change. See the Clover Dashboard for any applicable fees.

Payments
$0.00 per month up to 1 device. Each additional device $7.95 per month per device.

Shipping & Handling

Enable EMV

**YES**

## Shipping Address

Address

**1900 JFK BLVD 1412**

City

**PHILADELPHIA**

State

**PA**

Zip

**19103**

Shipping Method

| GROUND SERVICE |
|---|

**Total Shipping and Handling**

| ███ |
|---|

## ☐ 4. Payments Accepted

| American Express (OptBlue) | Discover Card (Discover Network Full Processing) |
|---|---|
| PayPal (Discover) | Mastercard/Visa |
| Debit (PIN and PINless) | |

## ☐ 5. Fee Schedule

In addition to the fees described in this Fee Schedule, you must pay us all Payments Organization Charges. "Payments Organization Charges" means all fees, charges, liabilities, or obligations that a Payments Organization imposes on us (1) in connection with your acceptance of its payment types, (2) in connection with the transactions processed under your MID, (3) as a result of your acts or omissions, or (4) as a result of the acts or omissions of others that act on your behalf or that provide services to you. Payments Organization Charges are not subject to the consequential damages exclusion in Section 10.2 and include but are not limited to: interchange; assessments (including but not limited to dues, issuer reimbursements, fines, penalties, and fraud recovery losses); fees established by the Payments Organizations (including but not limited to access fees, switch fees, and file fees); adjustments; and Chargebacks. See the Interchange Qualification Matrix, Card Organization Pass Through Fee Schedule and American Express OptBlue Guide available at www.businesstrack.com.

| MISCELLANEOUS FEES (IF APPLICABLE) | |
|---|---|
| ACH Reject Fee | ███ |
| Annual Maintenance Fee | |
| Minimum Processing Fee | |
| Incoming Retrieval Sms | |
| Incoming Chargeback All | |
| Pre-Arb/Pre-Comp Fee | |

| MONTHLY PRODUCT FEES | |
|---|---|
| Clover Security Plus Fee | ███ |
| Transarmor Monthly Fee | |
| Platform Access Monthly Fee | |

| START-UP FEES | |
|---|---|
| Application Fee | ███ |
| Equipment Purchase | |
| Installation Fee | |

Incoming/Out Going Except Sms

Clover Managed Security

CLVR MNGED Security Validated

Gateway Authorization Fee

Total Amount
Without tax.

## ☐ 6.Agreement Approval

**Please read this entire Agreement. It describes the terms on which we will provide merchant processing Services to you. This summary provides answers to commonly asked questions about your Agreement.**
**1. We may debit your bank account** (also referred to as your Settlement Account) for amounts owed to us.
**2. You are liable for Chargebacks and there are many reasons why a Chargeback may occur.** When they occur we will debit your Settlement Account. See Section 6.8.
**3. If you wish to dispute any charge or funding,** you must notify us within 60 days of the date of the statement on which the charge or funding appears.
**4. This Agreement limits our liability to you.** See Section 6.10 for further details.
**5. We have assumed certain risks** by agreeing to provide you with the Services. Accordingly, we may take certain actions to mitigate our risk, including termination of this Agreement, and holding monies otherwise payable to you (see Sections 6.15 and 6.16).
**6. By executing this Agreement with us** you authorize us and our Affiliates to obtain and share financial and credit information regarding your business and the signers and guarantors of this Agreement until all your obligations to us and our Affiliates are satisfied.
**7. Arbitration:** This Agreement contains a binding arbitration provision in Section 6.24 that affects your rights under this Agreement with respect to all Services.

**Merchant Business Principal:**

*allan k marshall*

**Allan Marshall**          09-26-2024 1:15PM
(CEO)

## ☐ 7.Personal Guaranty

In exchange for First Data Merchant Services LLC, and Wells Fargo Bank, N.A., (a member of Visa USA, Inc. and MasterCard International, Inc.), (the Guaranteed Parties) acceptance of the MPA and the General Terms and Conditions, the undersigned (Guarantor): (A) Unconditionally and irrevocably guarantees the full payment and performance of Merchants obligations (i) as they now exist or as modified under the foregoing agreements, (ii) with or without actual notice of changes, and (iii) during and after the term of the agreements; (B) Waives notice of Merchants de-fault; (C) Shall indemnify the Guaranteed Parties for any and all amounts due from Merchant; (D) Warrants, with knowledge that Guaranteed Parties are acting in full reliance on the same, this Personal Guarantee of payment and not of collection; (E) Acknowledges that (i) the Guaranteed Parties may proceed in

law directly against Guarantor and not Merchant, and (ii) this is a contin-uing personal guarantee and shall not be discharged or affected for any reason, and (iii) information about the Guarantor as one of the Merchant Parties may be used and shared as set forth in Section 6.

**Signature:**

*allan K Marshall*

**Allan Marshall**          09-26-2024 1:15PM
(CEO)

# ☐ 8.General Terms & Conditions

6.1. Your Agreement with Us

6.1.1 This Merchant Processing Agreement (the Agreement) is between the business identified in Section 1 and the Processor and Bank each identified in Section 7. This Agreement consists of all information presented or referenced on this webpage (consisting of all of Sections 1 through 7) and the Your Payments Acceptance Guide and the Card Organization Rules. This Agreement covers payment acceptance services provided to you through your Clover device. If you wish to receive payment acceptance services through some other means, you may be required to enter into a separate agreement.

6.1.2 You agree to comply with the Your Payments Acceptance Guide and the Card Organization Rules relevant to you, as they may change over time.

6.1.3 If there are any inconsistencies between this webpage and the Your Payments Acceptance Guide, or the Card Organization Rules, this webpage will govern.

6.2. Services and Non-Bank Services

6.2.1 Section 4 ("Payments Accepted") identifies the Services you will receive. Certain Services referred to in this Agreement may not be available to you.

6.2.2 Subject to Card Organization Rules, Services may be performed by us, our Affiliates, our agents, or other third parties we may designate. References to "we" "our" and "us" shall be deemed to be references to Bank and Processor except for the purposes of Sections 6.2.1, 6.11.1, 6.19, and 6.28. Bank shall not be a party to the aforementioned Sections nor shall Bank have any responsibility or liability pursuant to such Sections. Third Party Services, including any apps available in an application marketplace or voice or data services you purchase directly from a third party provider, are not governed by this Agreement and we are not responsible for providing, maintaining, servicing or supporting such services. If you decide to use Third Party Services, you will be responsible for reviewing and understanding the terms and conditions associated with Third Party Services. Any third party content downloaded or otherwise obtained through the use of the Services is downloaded at your own risk. WE WILL NOT BE RESPONSIBLE FOR ANY ACTIONS OR ANY FAILURES TO ACT OF ANY THIRD PARTY, AND WE EXPRESSLY DISCLAIM ANY LIABILITY RELATED TO ALL THIRD PARTY SERVICES. WE DO NOT WARRANT, ENDORSE, GUARANTEE, OR ASSUME RESPONSIBILITY FOR ANY THIRD PARTY SERVICE OR PRODUCT ADVERTISED OR OFFERED THROUGH THE SERVICES OR ANY HYPERLINKED WEBSITE OR SERVICE, OR FEATURED IN ANY BANNER OR OTHER ADVERTISING, AND WE WILL NOT BE A PARTY TO OR IN ANY WAY MONITOR ANY TRANSACTION BETWEEN YOU AND PROVIDERS OF THIRD PARTY SERVICES OR PRODUCTS.

6.3. Access and Use of Services

6.3.1 Except as specified in the Your Payments Acceptance Guide, or otherwise agreed in writing, the Services shall be for your internal business use in the United States only.

6.3.2 You shall not and shall not permit any third party to: (a) access or attempt to access any Service that is not intended to be available to you; (b) access or use (in any format) the Services (or any part) through any time-sharing service, service bureau, network, consortium, or other means; (c) without our advanced written consent, use, ship or access Services (or any part) outside or from outside of the United States; (d) perform or attempt to perform any actions that would interfere with the proper working of any Service, prevent access to or use of any Service by other users, or in our reasonable judgment, impose a large load on our infrastructure, network capability or bandwidth; or (e) use the Services (or any part) except as permitted in this Agreement.

6.3.3 We have the right to rely on user names, password and other sign on credentials/access controls for the Services or any Software provided or approved by us to authenticate access to, and use of, the Services and any Software.

6.4. Settlement

6.4.1 As part of the Services, we will process transaction data received from you and facilitate the transfer of funds for your Card sales to your Settlement Account.

6.4.2 We may debit your Settlement Account for any amounts owed to us, including any amounts paid to you in error. We may also offset any amounts owed to us or our Affiliates related to activity in other accounts maintained in your name or which you, any of your principals, guarantors or authorized signors guarantee.

6.4.3 You are responsible for providing us with accurate information regarding your Settlement Account. If you change the Settlement Account in which you receive the proceeds of your transactions, you must notify us immediately. If you accept payment types other than Visa, MasterCard, American Express and Discover Network (such as TeleCheck Services), you are also responsible for contacting the Card Organizations or companies governing those Cards to notify them of this change. We shall not be liable for delays in receipt of funds or errors in debit and credit entries caused by you or any other Person, including any delays or errors resulting from errors in Settlement Account information you provide.

6.4.4 We may without notice change processing or payment terms and/or suspend credits or other payments of any amounts due or which become due to you without advance notice if we have reason to believe there is a credit or security risk to us.

6.4.5 Your right to receive any amounts due or to become due from us is expressly subject and subordinate to Chargeback, setoff, lien, security interest and our rights to withhold settlement funds under this Agreement without regard to whether such Chargeback, setoff, lien, security interest and the withholding of settlement fund rights are being applied to claims that are liquidated, unliquidated, fixed, contingent, matured or unmatured.

6.5. Fees; Adjustments; Collection of Amounts Due

6.5.1 You will be charged, and agree to pay us, all fees set out in this Agreement.

6.5.2 If your fees are not paid through our automatic debiting process, and we are required to pursue collection efforts, you will reimburse us for our costs in an amount of not less than $100.00.

6.5.3 You will be provided access to monthly statements and other information about your account through your Clover dashboard available at https://www.clover.com/dashboard/login. You agree to review your statements each month.

6.5.4 If you believe any adjustments should be made to your Settlement Account, you must notify us in writing within 60 days after any debit or credit is or should have been effected. If you notify us after 60 days, you agree we have no obligation to investigate or effect any adjustments. Any voluntary efforts by us to assist you in investigating such matters do not obligate us to continue such investigation or to conduct any future investigation.

6.6. Electronic Funding Authorization

6.6.1 All payments to you shall be made through the automated clearing house system (ACH) and shall normally be electronically transmitted directly to the Settlement Account you have designated or any successor account designated to receive provisional funding of your transactions pursuant to this Agreement. You agree that any Settlement Account designated by you will be an account primarily used for business purposes. Funds will normally be transferred to your financial institution within one Business Day from the time the batch is received by Processor if your financial institution is the Bank. If your financial institution is not the Bank, funds will normally be transferred within two Business Days from the time a batch is received by Processor.

6.6.2 You agree to be bound by the operating rules of the ACH and you authorize us to (a) access information from the Settlement Account; (b) initiate credit and/or debit entries by wire or ACH transfer; (c) instruct your financial institution to (i) block or to initiate, if necessary, reversing entries and adjustments for any original entries made to the Settlement Account; and (ii) provide such access and to credit and/or debit or to block the Settlement Account.

6.6.3 If we cannot process an ACH payment, we may (a) charge you the applicable fee set out in the other fees section; and (b) suspend all subsequent funding until a new electronic funding agreement is signed by you or you notify us that ACH payments can be processed.

6.7. Chargebacks, fines and penalties

6.7.1 Cardholders and Issuers are authorized by Card Organization Rules and by law to reverse and Chargeback transactions that you submit to us.

6.7.2 You are obligated to reimburse us (and authorize us to debit your Settlement Account) for (a) all refunds, credits, Chargebacks and adjustments relating to transactions that you submit for processing; and (b) any fees, fines, assessments, obligations or other charges a Card Organization imposes on us in relation to your acts or omissions or the acts or omissions of your agents or those acting on your behalf.

6.8. Your Representations and Warranties

6.8.1 By submitting a transaction to us, you represent and warrant that the transaction:

a) is genuine and arises from a genuine sale or service that you directly sold or provided as described on your Application. (The submission of Authorization requests and/or Card transaction by you for Card sales or cash advances transacted by another business is considered laundering or factoring and is prohibited);

b) represents the correct amount of the goods or services purchased by the Cardholder from your business as identified on your Application;

c) is not subject to any dispute, set-off or counterclaim;

d) to your knowledge is not the result of fraud and has been authorized by the Cardholder;

e) does not violate the law of any applicable jurisdiction, including the jurisdiction where you are located, where the Cardholder is located, or where we are located;

f) except for any delayed delivery or advance deposit Card transactions expressly authorized under this Agreement, included your simultaneous delivery of the goods or services to the Cardholder; and

g) complies with this Agreement and Card Organization Rules.

6.8.2 You further represent and warrant, as of the date of this Agreement and at the time of submission of each transaction, that:

a) you are validly existing, in good standing and free to enter into this Agreement;

b) you have not changed the nature of your business or practices in a way not previously disclosed to us;

c) each statement made on the Application or other information provided to us in support of this Agreement is true, accurate and complete and you have maintained and updated this information to keep it true, accurate, current and complete;

d) you have not filed a bankruptcy petition not previously disclosed to us;

e) you will not process any credit transactions that do not correspond to a previous transaction on the original sales draft;

f) you will not at any time during the term of this Agreement or until all amounts have been paid in full under this Agreement, grant or pledge any security interest or lien of any type in any Reserve Account, Settlement Account or in any of the transaction proceeds to any Person without our consent; and

## 6.9. Limitations on Liability; Exclusion of Consequential Damages

6.9.1 THIS AGREEMENT IS A SERVICE AGREEMENT. USE OF THE SERVICES, SOFTWARE OR ANY EQUIPMENT (INCLUDING ANY SERVICES, SOFTWARE OR EQUIPMENT PROVIDED BY OR THROUGH A THIRD PARTY) IS AT YOUR OWN RISK AND TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW THE SERVICES, EQUIPMENT AND ANY SOFTWARE IS PROVIDED "AS IS" AND WE DISCLAIM ALL REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, MADE TO YOU OR ANY OTHER PERSON, INCLUDING ANY WARRANTIES REGARDING QUALITY, SUITABILITY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR THAT SERVICES, EQUIPMENT OR ANY SOFTWARE WILL OPERATE UNINTERRUPTED OR ERROR FREE OR THAT THE SERVICES, EQUIPMENT OR SOFTWARE ARE SECURE, FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS, OR DO NOT INFRINGE THE RIGHTS OF ANY PERSON.

6.9.2 IN NO EVENT SHALL WE OR OUR AFFILIATES OR ANY OF OUR OR THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES, AGENTS OR SUBCON - TRACTORS, BE LIABLE UNDER ANY THEORY OF TORT, CONTRACT, STRICT LIABILITY OR OTHER LEGAL THEORY FOR LOST PROFITS, LOST REVENUES, LOST BUSINESS OPPORTUNITIES, EXEMPLARY, PUNITIVE, SPECIAL, INCIDENTAL, INDIRECT OR CONSEQUENTIAL DAMAGES, EACH OF WHICH IS EXCLUDED BY AGREEMENT OF THE PARTIES, REGARDLESS OF WHETHER SUCH DAMAGES WERE FORESEEABLE OR WHETHER ANY PERSON HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

6.9.3 NOTWITHSTANDING ANYTHING IN THIS AGREEMENT TO THE CONTRARY (INCLUDING SECTION 6.23):

a) OUR CUMULATIVE LIABILITY FOR ALL LOSSES, CLAIMS, SUITS, CONTROVERSIES, BREACHES OR DAMAGES FOR ANY CAUSE WHATSOEVER (INCLUDING THOSE ARISING OUT OF OR RELATED TO THIS AGREEMENT AND ANY INDEMNITIES), REGARDLESS OF THE FORM OF ACTION OR LEGAL THEORY, SHALL NOT EXCEED, (I) $50,000; OR (II) THE AMOUNT OF FEES RECEIVED BY US UNDER THIS AGREEMENT FOR SERVICES PERFORMED IN THE IMMEDIATELY PRECEDING 12 MONTHS, WHICHEVER IS LESS;

b) ANY LIABILITY THAT WE MAY HAVE TO YOU FOR ANY DELAY IN FUNDING TRANSACTIONS WILL BE LIMITED TO INTEREST COMPUTED FROM THE DATE THAT YOU SUBMIT THE TRANSACTION TO THE DATE THAT WE FUND THE TRANSACTION AT THE RATE OF THE FEDERAL FUNDS AS SET BY THE FEDERAL RESERVE BANK OF NEW YORK, NEW YORK, LESS ONE PERCENT (1%); AND

c) OUR LIABILITY ARISING OUT OF OR IN ANY WAY CONNECTED WITH ANY EQUIPMENT OR SOFTWARE SHALL NOT EXCEED THE PURCHASE PRICE OR PRIOR TWELVE MONTH'S RENT OR FEES, AS APPLICABLE, PAID TO US FOR THE PARTICULAR EQUIPMENT OR SOFTWARE INVOLVED.

## 6.10. Confidentiality

6.10.1 You shall safeguard all confidential information we supply or otherwise make accessible to you (including the terms of this Agreement) using a reasonable degree of care. You shall only use our confidential information for the purposes of this Agreement and shall not disclose our confidential information to any person, except as we may agree in advance and in writing. At our request you shall return to us or destroy all of our confidential information in your possession or control.

6.10.2 You agree that breach of the restrictions on use or disclosure of our confidential information would result in immediate and irreparable harm to us, and money damages would be inadequate to compensate for that harm. We shall be entitled to equitable relief, in addition to all other available remedies, to redress any breach.

6.10.3 You may submit comments or ideas about our Services, including about how to improve our Services. By submitting any idea, you agree that: (a) we expressly disclaim any confidentiality obligations or use restrictions, express or implied, with respect to any idea; (b) your submission will be non-confidential; and (c) we are free to use and disclose any idea on an unrestricted basis without notifying or compensating you. You release us from all liability and obligations that may arise from our receipt, review, use or disclosure of any portion of any idea.

## 6.11. Use of Data

6.11.1 You agree we may use Transaction Data for the purpose of providing additional products and services to you, other merchants, or third parties. This includes using Cardholder information, dates, transaction details, and other Transaction Data to provide you with analytics products and services as well as collecting and using Transaction Data aggregated with other merchants transaction data to provide you, other merchants, and third parties with analytic products and services.

6.11.2 Any information that we collect in the course of providing Services to you may be used for fraud prevention, product development or any other reasonable purpose.

## 6.12. Intellectual Property Rights

6.12.1 All right, title, and interest in and to all confidential information and intellectual property related to the Services (including the Marks, all Software, the content of any materials, web screens, layouts, processing techniques, procedures, algorithms, and methods and any updates, changes, alterations, or modifications to or derivative works from such intellectual property), owned, developed or licensed by us prior to, during the term of, or after this Agreement, or employed by us in connection with the Services, shall be and remain, as among the Parties, our or our affiliates, our vendors or our licensors (as applicable) sole and exclusive property and all right, title and interest associated with the Services, Equipment and Software not expressly granted by us in this Agreement are deemed withheld. You may not use our Marks in any manner, including in any advertisements, displays, or press releases, without our prior written consent.

6.12.2 You may not, nor may you permit any third party to do any of the following: (a) decompile, disassemble, reverse engineer, or otherwise attempt to reconstruct or discover by any means any source code, underlying ideas or algorithms of the Service, Software or Equipment (or any part), except to the extent that such restriction is expressly prohibited by law; (b) modify, translate, or alter in any manner, the Service, Software or Equipment (or any part) or the Marks; (c) create derivative works of or based on the Service (or any part), Software or the Marks; (d) except for backup and archival purposes, directly or indirectly copy the Service or any Software (or any part); (e) republish, upload, post, transmit, disclose, or distribute (in any format) the Service or Software (or any part) except as permitted in this Agreement; or (f) remove, relocate, or otherwise alter any proprietary rights notices from the Service, Software or documentation (or any part) or the Marks.

6.12.3 If we provide you with copies of or access to any Software or documentation, unless otherwise expressly stated in writing, that Software and documentation is provided on a personal, non-exclusive, non-transferable, non-assignable, revocable limited license for the period of your subscription to the applicable Service and solely for you to access and use the Software and documentation to receive the relevant Services for its intended purpose on systems owned or licensed by you. Software can only be used with certain computer operating systems and it is your responsibility to ensure that you have the appropriate hardware and software to use the Software.

6.12.4 You shall not take any action inconsistent with the stated title and ownership in this Section 6.12. You will not file any action, in any forum that challenges the ownership of any part of the Service or any Software, materials or documentation. Failure to comply with this provision will constitute a material breach of this Agreement. We have the right to immediately terminate your access to and use of the Service in the event of a challenge by you.

6.12.5 If you are acquiring any Services on behalf of any part of the United States Government (Government): (a) any use, duplication, or disclosure by the Government is subject to the restrictions set forth in subparagraphs (a) through (d) of the Commercial Computer Software-Restricted Rights clause of FAR 52.227-19 when applicable, or in subparagraph (c)(1)(ii) of the Rights in Technical Data and Computer Software clause at DFARS 252.227-

7013, and in similar clauses in the NASA FAR Supplement; and (b) we are the contractor/manufacturer, with the address set forth in this Agreement.

## 6.13. Assignment

6.13.1 Any attempt to transfer or assign this Agreement in whole or part, or rent, lease, sell, sublicense or otherwise transfer any licensed rights, without our prior written consent, including by operation of law, transfer of voting control of you or your corporate parent or otherwise, is prohibited and voidable by us. In that event we may: (a) suspend Services at any time and without notice, (b) hold you and your guarantors liable for all obligations incurred by such purchaser or transferee, and (c) offset funding and obligations incurred on your accounts without regard to whether such funding or obligations relate to activities of you or of such purchaser or transferee.

6.13.2 If you make an assignment (or provide a security interest) of receivables covered by this Agreement, then we may, at our option, elect to: (a) refuse to acknowledge such assignment unless accompanied by an authorization to both initiate debits or credits to the bank account of the assignee; (b) terminate this Agreement immediately; or (c) charge for any transfers that we are called upon to make manually to fulfill such an assignment at the rate of $100 per transfer.

6.13.3 Subject to Card Organization Rules, and without providing notice to you or obtaining your consent, we may assign or transfer this Agreement and our rights, duties and obligations under this Agreement and may delegate or subcontract our rights, duties and obligations, in whole or in part, to any Person. In addition, another Visa and MasterCard member may be substituted for Bank under whose sponsorship this Agreement is performed with respect to Visa and MasterCard transactions. Upon such substitution, such other Visa and MasterCard member shall be responsible for all obligations required of Bank, including full responsibility for its Card program and such other obligations as may be expressly required by applicable Card Organization Rules.

6.13.4 If this Agreement is assigned with our permission or by operation of law, the restriction against assignment shall continue to apply to the assignee, who will not be authorized to further assign this Agreement except as described in this Section.

## 6.14. Term

6.14.1 This Agreement becomes effective only when approved by our Credit Department. We reserve the right to immediately suspend or terminate your account and this Agreement if you fail to meet our credit policies even if your account has been activated to submit transactions prior to your approval by our Credit Department.

6.14.2 This Agreement may be terminated by you or us at any time and for any reason.

6.14.3 The expiration or termination of this Agreement shall not affect the obligations and rights of the parties pursuant to provisions of this Agreement which by their terms are intended to survive, including Sections 6.8, 6.10, 6.11, 6.13, 6.16, 6.18, 6.23, and 6.24. After expiration or termination of this Agreement you shall continue to bear total responsibility for all transactions you have submitted to us and all Chargebacks, fees, Card Organization fines imposed on us as a result of your acts or omissions, credits and adjustments resulting from Card transactions processed pursuant to this Agreement, and all other amounts then due or which may become due under this Agreement.

6.14.4 If you file for protection under the U.S. bankruptcy code or any other laws relating to bankruptcy, insolvency, assignment for the benefit of creditors or similar laws, and you continue to use our Services, it is your responsibility to open new accounts to distinguish pre and post filing obligations. You acknowledge that as long as you utilize the accounts you established prior to such filing, we will not be able to systematically segregate your post-filing transactions or prevent set-off of the pre-existing obligations. In that event, you will be responsible for submitting an accounting record supporting any adjustments that you may claim.

6.14.5 The Card Organizations maintain merchant lists such as the Member Alert To Control High-risk (Merchants) (MATCH) who have had their merchant agreements or card acceptance rights terminated for cause. If this Agreement is terminated for cause, you (a) agree that we may report your business name and the names and other information regarding your principals to the Card Organizations for inclusion on such list(s); and (b) waive and hold us harmless from and against any and all claims which you may have as a result of such reporting.

6.15. Reserve; Security Interest

6.15.1 You agree that in addition to any other rights we have under this Agreement, we may establish a Reserve consisting of cash or other assets that we will hold to satisfy your obligations or potential obligations under this Agreement or any other agreement with us or our Affiliates.

6.15.2 The amount of the Reserve shall be set and modified by us in our sole discretion based upon your processing history and the potential risk of loss to us, as we may determine.

6.15.3 The Reserve shall be fully funded upon three days notice to you or immediately in instances of suspected fraud or if we have reason to believe there is a credit or security risk to us.

6.15.4 The Reserve may be funded by all or any combination of: (a) one or more debits to your Settlement Account or any other accounts held by Bank or any of its Affiliates, at any financial institution maintained in your name or in the name of any of your principals, or any of your guarantors, or if any of same are authorized signers on such account; (b) any payments otherwise due to you from us or our Affiliates; or (c) any other collateral that you agree to provide and we agree to accept in our mutual discretion.

6.15.5 If this Agreement is terminated by any party, an immediate Reserve may be established without notice in the manner provided above. In these circumstances, the Reserve will be held by us for up to 10 months after termination of this Agreement or for such longer period of time as may be consistent with resolution of all liability from your Card acceptance including Chargebacks, fines, fees or obligations of any other kind.

6.15.6 Any funds we hold in Reserve represent general payment obligations to you which do not become due until all potential contingent liabilities arising from your Card transactions have expired or lapsed. We may set-off any obligations that you owe to us before returning the balance of the Reserve. Unless specifically required by law, you shall not be entitled to interest on any funds held by us in the Reserve.

6.15.7 Notwithstanding Section 6.15.6 you agree that we have a security interest in all funds or other assets that we hold in Reserve and to provide us with any documentation we may request to perfect our security interest in the Reserve.

6.15.8 If any funds we hold in Reserve are not sufficient to cover the Chargebacks, adjustments, fees and other charges and amounts due from you, or if the funds in Reserve have been released, you agree to promptly pay us such sums upon request.

6.16. Account Information

6.16.1 You are solely responsible for: (a) ensuring the accuracy of all information and data regarding your business that you provide to us or our service providers in connection with the Services, including any menus loaded onto a Device; (b) verifying that all information and data loaded onto a Device by us or our service providers at your request are accurate prior to your business use of such Device; and (c) immediately notifying us should any information you have provided to us become inaccurate or misleading. We and our service providers disclaim any and all liability arising out of any inaccuracies with respect to such information or data.

6.16.2 You authorize us and our Affiliates to obtain from third parties financial and credit information relating to you in connection with our determination whether to accept this Agreement and our continuing evaluation of your financial and credit status. We may also access and use information which you have provided to us for any other reason.

6.16.3 You authorize us to share information provided by you in your Application or otherwise with other relevant organizations, including those involved in the provision of the Services.

6.17. Audit Rights

6.17.1 Upon notice to you, we may audit your usage, records and security, your customer's payment processing information, and the Services to ensure that (a) you are using the Services in full compliance with this Agreement; (b) all applicable fees have been paid; and; (c) you are in full compliance with all applicable laws, regulations and rules (including Card Organization Rules). Any such audit shall be conducted during regular business hours at your offices and shall not interfere unreasonably with your business.

6.17.2 You shall cooperate fully with any investigation or audit we or any Card Organization may undertake in relation to data security and you authorize us to share the details of any questionnaire or compliance report with

the Card Organizations.

## 6.18. Software Updates and Maintenance

6.18.1 We may perform maintenance on Software or Services which may result in service interruptions, delays, or errors. We will not be liable for any such interruptions, delays, errors, or bugs. You agree that we may contact you in order to assist you with the Software or Services and obtain information needed to identify and fix any errors.

6.18.2 We may, at our discretion, release enhancements, improvements or other updates to any Software. If we notify you of any such update, you shall integrate and install such update into your systems within thirty (30) days of your receipt of such notice. You acknowledge that failure to install any updates in a timely fashion may impair the functionality of the Software or Services. We shall have no liability for your failure to properly install the most current version of any Software or any update, and we shall have no obligation to provide support or services for any outdated versions.

6.18.3 You acknowledge and understand that certain Software can automatically install, download, and/or deploy updated and/or new components, which may include a new version of the Software itself. You shall not, in any event or in any manner, impede the update process. You agree to assume full responsibility and indemnify us for all damages and losses, of any nature, for all adverse results or third party claims arising from your impeding the update process.

6.18.4 The default version and functionality of Clover software applications that are accessible at the time you acquire a Clover Device may vary.

## 6.19. Accessing Services via wireless services, the Internet or third parties

6.19.1 You are solely responsible for the payment of any fees that may be imposed by your internet/data provider. Your use of any Services accessed wirelessly or through the internet is subject to: (a) the terms of any agreements you have with your internet/data provider; and (b) availability, transmission range and uptime of the services and any wireless equipment.

6.19.2 You agree that we shall not be liable to you for any claims, damages, losses, obligations, costs or expenses or other liability arising directly or indirectly from or otherwise concerning (a) any termination, suspension, delay or disruption of service (including billing for a service) by the internet, any common carrier or any third party service provider; (b) any failure, disruption or malfunction of any of the Services, the Internet, or any communications network, facility or equipment beyond our or a third party's reasonable control, whether or not attributable to one or more common carriers; (c) your failed attempts to access any Services or to complete transactions via any of the Services; or (d) any failure to transmit, obtain or collect data or for human, machine or software errors or faulty or erroneous input by you.

6.19.3 We may alter which Devices and browsers are approved as compatible with particular Services in our discretion.

6.19.4 If a Service relies on online connectivity to provide up-to-date data, you assume all risk, responsibility and liability associated with any transaction that you choose to conduct while the Service is offline.

## 6.20. Security

6.20.1 You are solely responsible for establishing and maintaining Card Organization Rule compliant security policies and procedures to prevent unauthorized access to and use of Cardholder Information or any other data, including by implementing: (a) all steps required to comply with the PCI DSS, including ensuring all third parties and software use by you in connection with your payment processing are compliant with PCI DSS; (b) appropriate controls to limit access to, and render unreadable prior to discarding, all Cardholder Information and other data; (c) firewalls, passwords and other appropriate security features to protect against unauthorized access to your terminals, systems, the Services and any Software by your employees, contractors, customers, or by any other person (including instituting appropriate controls to prevent employees or others from submitting credits that do not reflect bona fide returns or reimbursements of earlier transactions); and (d) any other reasonable protective techniques suggested by us. You are required to provide information to us regarding your

PCI-DSS compliance when requested, including but not limited to an annual questionnaire that we will make available to you.

6.20.2 If you become aware of any loss, theft or unauthorized use of any data and/or any suspected breach of your systems or any suspicious transactions or fraudulent activity or if any other Data Security Event occurs, you shall (a) immediately notify us (and, as required under the Card Organization Rules, each Card Organization); (b) cooperate fully with any investigation into such matter by us or any Card Organization; (c) investigate the matter and perform all remedial actions reasonably specified by us; (d) not, without our prior written consent, take any action, or fail to take any action, which prejudices our rights under this Agreement. If you do so, it will be at your own expense; and (e) grant us and our vendors the right to access and perform a scan of the IP addresses identified within your profile (and you agree and authorize payment for the additional scan). We reserve the right to deny you access to the Services, in whole or in part, if we believe that any loss, theft or unauthorized use of any data or access information has occurred.

6.20.3 You are responsible for all electronic communications sent to us or to any third party. When we receive communications from you we will assume you sent it to us.

6.20.4 You will not obtain ownership rights in any Cardholder Information. You must not use, disclose, store, sell or disseminate any Cardholder Information except for purposes of authorizing, completing and settling Card transactions and resolving any Chargebacks, retrieval requests or similar issues involving Card transaction.

## 6.21. Compliance with Laws

6.21.1 You shall comply fully with the requirements of all applicable federal, state and local laws and regulations related to your use of Software, Equipment and each Service and provision and use of any Cardholder Information, customer information and other point of sale data in connection with the Services. You shall not use the Services for illegal purposes.

6.21.2 You are solely responsible for obtaining all required permits and monitoring legal developments applicable to the Services and the operation of your business, interpreting applicable laws and regulations, determining the requirements for compliance with all applicable laws and regulations, and maintaining an on-going compliance program.

6.21.3 NOTWITHSTANDING THE CAPABILITY OF CERTAIN SERVICES TO COLLECT AND STORE CUSTOMER INFORMATION AND TO ALLOW YOUR CUSTOMERS TO ELECT TO RECEIVE MARKETING MATERIALS FROM YOU, SOME STATES MAY LIMIT YOUR USE OF SUCH INFORMATION ONCE COLLECTED, EVEN IF THE CUSTOMER HAS PROVIDED HIS CONSENT, AND/OR YOUR DISCLOSURE OF SUCH INFORMATION TO THIRD PARTIES. YOU ACKNOWLEDGE AND AGREE THAT (a) YOUR USE OF ANY CUSTOMER INFORMATION OBTAINED IN CONNECTION WITH THE SERVICES MAY BE SUBJECT TO LOCAL, STATE, AND/OR FEDERAL LAWS, RULES, AND REGULATIONS, (b) YOU ARE SOLELY RESPONSIBLE FOR KNOWING SUCH LAWS, RULES, AND REGULATIONS, AND (c) YOU WILL AT ALL TIMES STRICTLY COMPLY WITH ALL SUCH LAWS, RULES, AND REGULATIONS.

## 6.22. Indemnification

6.22.1 You agree to indemnify and hold us, our Affiliates and third party service providers harmless from and against all losses, liabilities, damages and expenses arising from: (a) any breach or misrepresentation by you under this Agreement; (b) your or your employees or your agents negligence or willful misconduct, in connection with Card transactions or otherwise arising from your provision of goods and services to Cardholders; (c) your use of the Services, including any Software or Equipment provided under this Agreement; (d) any third party indemnifications we are obligated to make as a result of your actions (including indemnification of any Card Organization or Issuer); (e) your use of any Cardholder Information or other customer information obtained in connection with your use of the Services; (f) the content or delivery of any marketing messages that you send or cause to be sent to any customer; or (g) any other persons authorized or unauthorized access and/or use of any Service, Software or Equipment, whether or not using your unique username, password, or other security features.

6.22.2 Subject to the limitations set forth in Section 6.9.3, we agree to indemnify and hold you harmless from and against all losses, liabilities, damages and expenses directly resulting from any breach or misrepresentation by us under this Agreement or directly arising out of our or our employees gross negligence or willful misconduct in

connection with this Agreement; provided that this indemnity obligation shall only apply to Bank in relation to the services provided by it hereunder.

## 6.23. Arbitration

6.23.1 This arbitration provision shall be broadly interpreted. If you have a Dispute with us that cannot be resolved informally, you or we may elect to arbitrate that Dispute in accordance with the terms of this arbitration provision rather than litigate the Dispute in court. In arbitration, there is no judge or jury, and there is less discovery and appellate review than in court.

6.23.2 Notwithstanding Section 6.23.1, you and we agree that the following will not be subject to arbitration: (a) disputes relating to the scope, validity, or enforceability of this arbitration provision; (b) any claim filed by you or us in which the amount in controversy is properly within the jurisdiction of a small claims court; and (c) any dispute related to the validity of any party's intellectual property rights.

6.23.3 If you or we elect to resolve your Dispute through arbitration pursuant to this arbitration provision, the party initiating the arbitration proceeding shall open a case with the American Arbitration Association - Case Filing Services, 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043, 877-495-4185, www.adr.org.

6.23.4 Because the Services provided to you under this Agreement concern interstate commerce, the Federal Arbitration Act (FAA) will govern this arbitration provision, including the issue of whether the Dispute is subject to arbitration. Any arbitration will be governed by the Commercial Arbitration Rules of the American Arbitration Association (AAA). If there is a conflict between this arbitration provision and the AAA Rules, this arbitration provision shall govern. If the AAA will not administer a proceeding under this arbitration provision as written, it cannot serve as the arbitration organization to resolve your Dispute. If this situation arises, the parties shall agree on a substitute arbitration organization. If the parties are unable to agree, the parties shall mutually petition a court of appropriate jurisdiction to appoint an arbitration organization that will administer a proceeding under this arbitration provision as written. If there is a conflict between this arbitration provision and the rest of this Agreement, this arbitration provision shall govern.

6.23.5 A single arbitrator will resolve the Dispute. The arbitrator will honor claims of privilege recognized by law and will take reasonable steps to protect your information and other confidential or proprietary information. If the claim alleged in the Dispute is for $10,000 or less, and the Dispute is not excluded based on Section 6.23.2 above, you may choose whether the arbitration will be conducted solely based on documents submitted to the arbitrator, through a telephonic hearing, or by an in-person hearing under the rules of the selected arbitration organization. The arbitrator will make any award in writing but need not provide a statement of reasons unless requested by a party. An award rendered by the arbitrator may be entered in any court having jurisdiction over the parties for purposes of enforcement.

6.23.6 If an award granted by the arbitrator exceeds $50,000, either party can appeal that award to a three-arbitrator panel administered by the same arbitration organization by a written notice of appeal filed within thirty (30) days from the date of entry of the written arbitration award. The arbitration organization will then notify the other party that the award has been appealed. The members of the three-arbitrator panel will be selected according to the AAA's Commercial Arbitration Rules. The three arbitrator panel will issue its decision within one hundred and twenty (120) days of the date of the appealing party's notice of appeal. The decision of the three-arbitrator panel shall be final and binding, except for any appellate right which exists under the FAA.

6.23.7 ALL PARTIES TO AN ARBITRATION MUST BE INDIVIDUALLY NAMED. THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED OR LITIGATED ON A CLASS ACTION, JOINT, OR CONSOLIDATED BASIS OR ON A BASIS INVOLVING CLAIMS BROUGHT IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF THE GENERAL PUBLIC (SUCH AS A PRIVATE ATTORNEY GENERAL), OTHER CLIENTS, OR OTHER PERSONS.

6.23.8 The arbitrator may award injunctive or similar relief only in favor of the individually named party and only to the extent necessary to provide relief warranted by that individual party's claim. The arbitrator may not award injunctive relief applicable to any class or similarly situated individual or groups.

6.23.9 The arbitration will take place in Suffolk County, NY.

6.23.10 We will pay arbitration filing fees and arbitrator's costs and expenses notified to us prior to the commencement of the arbitration. You are responsible for all additional costs that you incur in the arbitration, including, but not limited to, fees for attorneys or expert witnesses. If the arbitration is resolved in our favour, you shall reimburse us for the filing fees and costs paid to you only up to the extent awardable in a judicial

proceeding. If the arbitration is resolved in your favour, you will not be required to reimburse us for any of the fees and costs paid by us. Notwithstanding anything to the contrary in this arbitration provision, we will pay all fees and costs that we are required by law to pay.

6.23.11 IF YOU DO NOT WISH TO ARBITRATE DISPUTES, YOU MUST NOTIFY US IN WRITING WITHIN 30 DAYS OF THE DATE THAT YOU FIRST RECEIVE THIS AGREEMENT BY WRITING YOUR NAME, ADDRESS AND ACCOUNT NUMBER AS WELL AS A CLEAR STATEMENT THAT YOU DO NOT WISH TO RESOLVE DISPUTES THROUGH ARBITRATION AND SENDING THAT NOTICE EITHER (a) BY E-MAIL TO ARBITRATIONOPTOUT@FIRSTDATA.COM; (b) BY FAX AT 402- 916-2200; or (c) BY MAILING TO "ARBITRATION OPT OUT NOTICE, 3975 N.W. 120TH AVENUE, CORAL SPRINGS, FL 33065 (THESE FAX NUMBERS AND ADDRESSES ARE ONLY FOR SUBMITTING THE NOTICE DESCRIBED IN THIS SECTION). YOUR DECISION TO OPT OUT OF ARBITRATION WILL HAVE NO ADVERSE EFFECT ON YOUR RELATIONSHIP WITH US OR THE SERVICES PROVIDED BY US.

6.23.12 If any part of Section 6.23.7 is found to be illegal or unenforceable, the entire arbitration provision will be unenforceable, and the Dispute will be decided by a court. If any other clause in this arbitration provision is found to be illegal or unenforceable, that clause will be severed from this arbitration provision, and the remainder of this arbitration provision will be given full force and effect.

6.23.13 YOU AND WE HAVE AGREED TO WAIVE THE RIGHT TO TRIAL BY JURY.


6.24. Notices

6.24.1 All notices and other communications required or permitted under this Agreement (other than those involving normal operational matters relating to the processing of Card transactions) shall be in writing and sent:

a) if to you, to your email address or postal address appearing on the Application;

b) if to Processor, to its address appearing in the Confirmation section, with a copy to Attention: General Counsel's Office, 3975 N.W. 120th Avenue, Coral Springs, FL 33065; and

c) if to Bank, to the address appearing in the Confirmation section.

6.24.2 Notices shall be effective when actually received or, if sent by courier, when delivered. Notices sent to your last known e-mail address or postal address, as indicated in our records, shall constitute effective notice to you under this Agreement.

6.24.3 You must give us 30 days prior notice of any change to your address. Failure to provide us with a valid address may result in the termination of this Agreement.

6.24.4 Notwithstanding the above, all bankruptcy, credit reporting or collection related notices must be sent to the following address: Merchant Services Department, P.O. Box 675799 Marietta, GA 30006. Attn: Bankruptcy and Collection Notifications.

6.24.5 All notices must include your name(s) and merchant number(s).


6.25. Communications

6.25.1 You agree that we, our affiliates and our third party subcontractors and/or agents, may use, in addition to any live agent calls, an automatic telephone dialing system, an artificial or pre-recorded voice, SMS messages (or any combination of methods) to contact you at any telephone number(s) you have provided to us, which you have used to contact us, or which is associated with a device you have used to submit transactions to us, even if the number provided is a cellular or wireless number or if you have previously registered on a Do Not Call list or requested not to be contacted for solicitation purposes.


6.26. Whole Agreement; Waiver; Severability

6.26.1 This Agreement constitutes the entire Agreement between the parties with respect to its subject matter, and supersedes any previous agreements and understandings.

6.26.2 A party's waiver of a breach of any term or condition of this Agreement shall not be deemed a waiver of any subsequent breach of the same or another term or condition.

6.26.3 Except with respect to Section 6.23, the parties intend every provision of this Agreement to be severable, and, if any part of this Agreement is not enforceable, the remaining provisions shall remain valid and enforceable.

## 6.27. Amendment

6.27.1 We may modify this Agreement (including changing the fees or adding new fees) by providing 20 days written notice to you. If you do not wish to accept any modifications, you may terminate the Agreement at any time or simply cease using the Services.

## 6.28. Third Party Beneficiaries

6.28.1 Our Affiliates and any Persons we use in providing the Services are third party beneficiaries of this Agreement and each of them may enforce its provisions as if they are a party to it. The rights of the parties to rescind or agree to any variations, waiver or settlement under this Agreement are not subject to the consent of any Person.

6.28.2 Except as expressly provided in this Agreement, a person who is not a party to this Agreement shall have no rights or remedies under this Agreement.

## 6.29. 6050W of the Internal Revenue Code

6.29.1 Under Section 6050W of the Internal Revenue Code, you will receive a Form 1099- K reporting the gross dollar amount of card transactions processed through your merchant account with us in each year.

6.29.2 Amounts reportable under Section 6050W are subject to backup withholding requirements. We will be required to perform backup withholding by deducting and withholding income tax from reportable transactions if (a) you fail to provide your taxpayer identification number (TIN) to us, or (b) if the IRS notifies us that the TIN (when matched with the name) provided by you is incorrect. Accordingly, to avoid backup withholding, it is very important that you provide us with the correct name and TIN that you use when filing your tax return that includes the transactions for your business.

## 6.30. Export Compliance

6.30.1 You agree not to export or re-export any Software or Equipment or any underlying information except in full compliance with all applicable laws and regulations.

6.30.2 None of the Software or Equipment or any underlying information may be down - loaded or otherwise exported or re-exported (a) to any country to which the United States has embargoed goods (or any national or resident thereof); (b) to anyone on the United States Treasury Department's list of Specially Designated Nationals or the United States Commerce Department's Table of Deny Orders; or (c) in any manner not in full compliance with the requirements of the United States Bureau of Industry and Security and all applicable Export Administration Regulations.

6.30.3 If you have rightfully obtained Software or Equipment or any underlying information outside of the United States, you agree not to re-export the same except as permitted by the laws and regulations of the United States and the laws and regulations of the jurisdiction in which you obtained it. You warrant that you are not located in, under the control of, or a national or resident of any such country or on any such list.

## 6.31. Interpretation; Definitions

6.31.1 The headings contained in this Agreement are for convenience of reference only and shall not in any way affect the meaning or construction of any provision of this Agreement. References in this Agreement to include, including, or in particular shall not be given a restrictive meaning and shall be interpreted without limitation. Reference to any legislation is to such legislation as amended or supplemented in the future.

6.31.2 Certain terms used in this Agreement are defined below:

Affiliate: a Person that, directly or indirectly, (i) owns or controls a party to this Agreement or (ii) is under common ownership or control with a party to this Agreement.

Anticipated Interchange and Program Pricing Level: your initial anticipated Card Organization interchange and program pricing rates.

Application: Sections 1-5 of this Agreement.

Authorization: approval by, or on behalf of, the Issuer to validate a transaction. An Authorization indicates only that the Issuer has confirmed there is sufficient availability of funds on the Cardholder's account at the time the Authorization is requested.

Authorization and Capture: the communication of instructions from your POS or other systems to our computer systems, whether the communications are for authorization requests or any other capture of information.

Card: See either Credit Card or Debit Card.

Cardholder: the Person whose name is embossed on a Card and any authorized user of such Card, also referred to as a Card Member by American Express.

Cardholder Information: the data contained on a Card, or otherwise provided to you, that is required by the Card Organization or us in order to process, approve and/or settle a Card transaction, including the names, addresses and Card account numbers of Cardholders.

Card Organization: any entity formed to administer and promote Cards, including MasterCard Worldwide (MasterCard), Visa U.S.A., Inc. (Visa), DFS Services LLC (Discover Network), American Express Travel Related Services Company, Inc. (American Express) and any applicable debit networks.

Card Organization Rules: the rules, regulations, releases, interpretations and other requirements (whether contractual or otherwise) imposed or adopted by any Card Organization and related authorities, including those of the PCI Security Standards Council, LLC and the National Automated Clearing House Association (including, with respect to EBTs, the Quest Operating Rules).

Chargeback a Card transaction (or disputed portion) that is returned to us by the Issuer. You are responsible for payment to us for all Chargebacks.

Clover: Clover Network, Inc.

Clover Service: the website associated with the Clover Service, the object code version of Clover software applications (whether owned or licensed by Clover) resident on a Device at the time we provide you with the Device and the object code version of the software that enables the applications resident on a Device at the time of provisioning, and any related updates (including software maintenance or bug fixes) that are designed to assist with the management of your business and enable payment processing at the point of sale, and any materials, documentation and derivative works released by us.

Credit Card: a card bearing a valid Mark of Visa, MasterCard, Discover Network or American Express (or any other Card Organization specified by us in writing) and authorizing the Cardholder to buy goods or services on credit.

Credit Limit: the credit line set by the Issuer for the Cardholder's Credit Card account. Data Security Event: any actual or suspected unauthorized or fraudulent access to (or use, disclosure, or alteration of) Transaction Data (including but not limited to Cardholder Information) whether consisting of a single event, a continuous course of events, or a series of related events.

Debit Card: a card bearing a valid Mark of Visa, MasterCard, Discover Network or American Express or any debit network that is used to access funds in a Cardholder's bank account or a prepaid account.

Device: a tablet, smartphone, or other mobile or fixed form factor identified by us as compatible with and capable of accessing and/or supporting a particular Service.

Discount Rate: a percentage rate or amount charged to a merchant for processing its qualifying daily Credit Card and Non-PIN Debit transactions.

Dispute: any dispute, claim, or controversy related to or arising under any aspect of your relationship with us, whether directly with Processor and/or Bank, or indirectly with any other person or entity related to the relationship, and arising at any time during, before, or after that relationship.

EMV Upgrade Costs: the costs you agree to incur to upgrade payment acceptance and processing hardware and software to enable you to accept and process EMV-enabled Cards in a manner compliant with the PCI DSS.

Equipment: equipment rented to or purchased by you under this Agreement and any Equipment Documents.

Equipment Documents: documents setting out additional terms on which Equipment is rented to or purchased by you under this Agreement.

General Terms: these general terms and conditions on which the Services are provided, including any amendments or modifications.

Foreign Currency: a currency other than the Local Currency and supported by us for a particular service.

Issuer: the financial institution or Card Organization that has issued a Card to a Person.

Marks: names, logos, emblems, brands, service marks, trademarks, trade names, tag lines or other proprietary designations.

Merchant Account: shall mean an account set up for a merchant that requires a card processor, bank, merchant i.d., terminal i.d., merchant account number, or otherwise named unique merchant number. Multiple physical or virtual storefronts that process transactions under the same unique merchant number shall be deemed as one (1) Merchant Account.

Merchant Account Number: a number that numerically identifies each merchant location, outlet, or line of business to us for accounting and billing purposes.

MID: merchant identification number.

Non-PIN Debit: a transaction using a Debit Card that is processed without the use of a PIN.

PCI: Payment Card Industry.

PCI DSS: Payment Card Industry Data Security Standard, as amended from time to time.

Person: an individual, corporation, partnership, sole proprietorship, trust, association or any other legally recognized entity or organization, other than you or us.

PIN: a Personal Identification Number entered by the Cardholder to submit a PIN Debit transaction.

PIN Debit: a transaction using a Debit Card where a Cardholder-enters a PIN via a PIN Pad.

Reserve: funds that are otherwise payable to you which we hold to secure your obligations under this Agreement, pursuant to Section 6.16 of this Agreement. The Reserve may also refer to other collateral that you may provide to us to secure such obligations. References to "Reserve Account" shall refer to our records and accounting of such funds or other collateral.

Security Event Expenses: means: (a) any obligation that you have to us arising from a Data Security Event, including EMV Upgrade Costs; (b) the cost of a security assessment conducted by a qualified security assessor approved by a Card Organization or PCI to determine the cause and extent of a Data Security Event; and (c) any reasonable fees or expenses incurred by us, or by you with our prior written consent, for any Mitigation Service specifically approved by us in writing but only if the Mitigation Service is provided within one (1) year after discovery of the relevant Data Security Event.

Servicers: Bank and Processor collectively. The words "we," "us" and "our" refer to Servicers, unless otherwise indicated.

Services: the activities undertaken by us to authorize, process and settle Card transactions undertaken by Cardholders at your location(s), and all other services provided by us under this Agreement.

Settlement Account: an account or account(s) at a financial institution designated by you as the account to be debited and credited by us for Card transactions, fees, Chargebacks and other amounts due under this Agreement or in connection with this Agreement.

Software: all software, computer programs, related documentation, technology, know-how and processes embodied in the Equipment i.e. firmware or otherwise provided to you under this Agreement. For the avoidance of doubt, the term Software shall not include any third party software available as part of a Third Party Service or which may be obtained by you separately from the Services (e.g. any applications downloaded by you through an application marketplace).

Third Party Services: services, products, promotions or applications provided by someone other than us.

Transaction Data: data collected as part of performing Services for you.

Wireless Services: wireless data communication services that use radio base stations and switching offered by Wireless Networks in order to allow you to capture and transmit to us certain wireless Card Authorization transactions or to transmit other communications to our system.

Wireless Software: wireless software (including any documentation relating to or describing the wireless software) downloaded by you or your designee from our systems onto the Wireless Equipment.

You, Your: the merchant signing this Agreement.

Your Payments Acceptance Guide: the information prepared by us, containing operational procedures, instructions and other rules and requirements relating to Card transactions.

# ☐ 9. Confirmation

## Processor Information

Name

**First Data Merchant Services LLC**

Address

**4000 Coral Ridge Dr., Coral Springs, FL 33065**

URL

**www.firstdata.com**

Customer Service #

**1-877-273-8191**

**Information about Bank:**
a) Your Bank, who is a Visa and MasterCard Member Bank, is Pathward, N.A., 5501 S. Broadband Lane, Sioux Falls, SD 57108, 1 (866) 550-6382.
b) Bank is the entity approved to extend acceptance of Visa and MasterCard products directly to you and will be a party to the sections of this Agreement listed in Section 6.2.2.

c) Bank works with Processor to provide the Services to you with respect to Visa Cards and to MasterCard Cards.

d) Bank shall, either directly or through Processor, advise you of pertinent Card Organization Rules with which you must comply.

e) Bank is responsible for and must provide settlement funds to you and will be responsible for all funds held in a reserve.

**Your Responsibilities:**

a) You must comply in full at all times with this Agreement (including the Your Payments Acceptance Guide), all Card Organization Rules and all Cardholder and customer data security and storage requirements.

b) You may view and download the Your Payments Acceptance Guide at: Your Payments Acceptance Guide.

c) You may download the Visa and MasterCard rules at:

https://usa.visa.com/support/merchant.html

http://www.mastercard.com/us/merchant/support/rules.html

d) For your account to stay operational, you must keep fraud and Chargeback levels below Card Organization thresholds.

e) Please retain a signed copy of your Agreement.

By clicking the ""I Agree"" button below, you are confirming that you are the owner identified in Section 2 and that you have received and read Sections 1 through 7 on behalf of yourself and the business identified in Section 1. You are also (A) agreeing to authorize Servicers and our affiliates or agents to

(1) to use, disclose, and exchange amongst them, the information in the Agreement and information about me personally, (including by requesting, personal and business consumer reports, bank references, and other information as necessary from time to time), for marketing and administrative purposes, verification purposes, and any other purpose under this Agreement, if approved, and any other uses permitted by law; (2) to inform me directly about the contents of requested consumer reports (including the name and address of the agency furnishing the report), and (3) to receive any and all personal and business credit financial information from all references, including banks and consumer reporting agencies, which are hereby released to provide that information; and (B) I certify that: (1) The federal taxpayer identification number and corresponding filing name provided herein are correct; (2) The statements made and agreed to in this agreement are true, complete and accurate, and may be relied upon as current unless changed or updated per its Notice provisions of Agreement; (3) I can read and understand the English language; (4) I have received and read this Agreement and agree to follow it and understand that the Your Payments Acceptance Guide is available at https://www.businesstrack.com upon account approval; (5) I have authority to bind the entity on whose behalf I am signing below; I further acknowledge and agree that I will not use my merchant account and/or the Services for illegal transactions, for example, those prohibited by the Unlawful Internet Gambling Enforcement Act, 31 U.S.C. Section 5361 et seq, as may be amended from time to time, or for processing and acceptance of transactions in certain jurisdictions pursuant to 31 CFR Part 500 et seq. and other laws enforced by the Office of Foreign Assets Control (OFAC).

**By signing below, you:**

**(i) confirm that you have received and read this Merchant Processing Agreement which includes the Confirmation Page], [Interchange Rate Schedule]; and**

**(ii) agree to all terms in this Agreement in your capacity as a person authorized to sign on behalf of the business set out in the Application.**

**(iii) acknowledge that you have executed the Agreement using an electronic signature process and that signature reflects your agreement to be bound to the General Terms and Conditions set forth in the Agreement.**

**(iv) I further certify to the fact that I am the current majority owner or authorized signer listed on the merchant account of the company. To the best of my knowledge the Beneficial Ownership information is complete and accurate. I will notify processor promptly of any changes to that information.**

**(v) in the event that no beneficial owners are listed, I certify that there are no individuals that own, directly or indirectly, 25 percent or more in equity interests of the legal entity.**

**Business Principal Signature:**

*allan k marshall*

**Allan Marshall**          09-26-2024 1:15PM

(CEO)