# United States District Court
# For
# The Eastern District of Pennsylvania

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Allan K. Marshall

Plaintiff,                             2:25-cv-06427-MKC

vs.

FIRST DATA,

FISERV SOLUTIONS, LLC,

and VASHTI RAMDEEN,

Defendants.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## Plaintiff's Supplement to Sur-Reply
## In Opposition to
## Defendants' Motion to Dismiss

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Allan K. Marshall ("Plaintiff") submits this Sur-Reply to address new arguments raised in Defendants' Reply.

It should be pointed out the issue of charge backs is controlled by the Fair Credit Billing Act:

Fair Credit Billing Act (FCBA), 15 U.S. Code §§ 1666-1666j

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Here is the relevant portion of FCBA with commentary:

The Fair Credit Billing Act (FCBA), 15 U.S. Code §§ 1666-1666j, protects consumers by requiring creditors to investigate and respond to billing disputes as well as requiring prompt crediting of refunds. This federal credit protection law requires creditors to promptly correct billing mistakes and it allows you to withhold payments on defective goods plus it also requires creditors to promptly credit your payments to avoid late fees.

1

If a creditor fails to follow the billing error procedures described above, a consumer may be entitled to actual damages and statutory damages of up to $5,000. In addition, the FCBA contains a "fee-shifting" provision which may require the defendant to pay for the plaintiff's attorney fees and court costs.

Who is regulated?

Credit card companies are the most common examples of an open-end creditor. However, the provisions of the FCBA will apply to banks, credit unions, and other lenders when an open-end loan, such as a line of credit, is made.

Does the FCBA cover billing errors?

The Fair Credit Billing Act (FCBA) sets up procedures requiring creditors to promptly correct billing mistakes, allowing you to withhold payments on defective goods and requiring creditors to promptly credit your payments.

The law defines a billing error as any charge:

For something you didn't buy or for a purchase made by someone not authorized to use your account;
That is not properly identified on your bill or is for an amount different from the actual purchase price or was entered on a date different from the purchase date; or
For something that you did not accept on delivery or that was not delivered according to agreement.

Billing errors also include:
Errors in arithmetic;
failure to show a payment or other credit to your account;
failure to mail the bill to your current address, if you told the creditor about an address change at least 20 days before the end of the billing period; or
a questionable item, or an item for which you need more information.
If you think your bill is wrong, or want more information about it, follow these steps:

First, notify the creditor in writing within 60 days after the first bill was mailed that showed the error. Be sure to write to the address the creditor lists for billing inquiries and provide the following information:
your name and account number;
the date and suspected amount of the error or the item you want explained; and,
that you believe the bill contains an error and why you believe it is wrong.
Next, pay all parts of the bill that are not in dispute. But, while waiting for an answer, you do not have to pay the amount in question (the "disputed amount") or any minimum payments or finance charges that apply to it.

> *The creditor must acknowledge your letter within 30 days, unless the problem can be resolved within that time. Within two billing periods–but in no case longer than 90 days–either your account must be corrected or you must be told why the creditor believes the bill is correct.*

If the creditor made a mistake, you do not pay any finance charges on the disputed amount. Your account must be corrected, and you must be sent an explanation of any amount you still owe.

If no error is found, the creditor must send you an explanation of the reasons for that finding and promptly send a statement of what you owe, which may include any finance charges that have accumulated and any minimum payments you missed while you were questioning the bill. You then have the time usually given on your type of account to pay any balance, but not less that 10 days.

Finally, if you still are not satisfied, you should notify the creditor in writing within the time allowed to pay your bill. Demand that they provide you with the requested information. A creditor may not threaten your credit rating while you're resolving a billing dispute.

Once you have written about a possible error, a creditor must not give out information to other creditors or credit bureaus that would hurt your credit reputation. And, until your complaint is answered, the creditor also may not take any action to collect the disputed amount.

After the creditor has explained the bill, if you do not pay in the time allowed, you may be reported as delinquent on the amount in dispute and the creditor may take action to collect. Even so, you can still disagree in writing.

Then the creditor must report that you have challenged your bill and give you the name and address of each person who has received information about your account.

When the matter is settled, the creditor must report the outcome to each person who has received information. Remember that you may also place your own side of the story in your credit record.

When does the law apply?

The FCBA will generally apply when a consumer discovers a credit card billing statement error or other open-end loan billing statement error. For example:

When a consumer discovers an error, he or she has 60 days from the first date the error appeared on a bill to notify the creditor of the error. The notice must be in writing and allow the creditor to identify the consumer's name and account number. The notice must also include a

*3*

description of the error and why the consumer believes an error was made.

After receiving the error notice, the creditor must acknowledge receipt of the notice within 30 days.

Unless the creditor is going to correct the error reported by the consumer, it must conduct a reasonable investigation. The investigation must be completed no later than 90 days after it receives the error notice.

During the time the creditor is investigating the reported error, it cannot attempt to collect the amount that is in dispute. If the creditor determines that an error has occurred, it must correct the error and credit the account with the disputed amount and any related charges. It also must mail a correction notice to the consumer.

If the creditor determines that no error occurred, or a different error than the one reported occurred, it must mail an explanation of the reasons for its determination to the consumer, give the consumer evidence of its determination, if requested, and correct any other error which it may have discovered.

Do billing errors include defective goods or services?

The Fair Credit Billing Act allows you to withhold payment on any damaged or poor quality goods or services purchased with a credit card, as long as you have made a real attempt to solve the problem with the merchant This right may be limited if the card was a bank, travel or entertainment card or any card not issued by the store where you made your purchase. In such cases, the sale:

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Under the Fair Credit Billing Act (FCBA) 15 U.S.C. §§ 1666–1666j there are two pre-conditions:

1.      The consumer must make a good-faith attempt to resolve the issue with the merchant first, ie. Mr. Marshall's company.

2.      The dispute must be sent in writing

Mr. Marshall hereby certifies that he never did received any complaint directly from the consumers or any bank in which they had a credit card account at any time.

Regardless, the bank of the consumer had ninety days max to

4

resolve any complaint on 12/6/24.

Assume that a customer complained on 12/6/24. Any entity, be it the bank of the customer or any of the three defendants, had a maximum of 90 days i.e. until 3/6/25, to resolve the dispute. If thjere was a dispute they failed to reolve it. They do not have a right to withhold Mr. Marshall's  money for an unlimited amount of time. If they fail to act in a timely manner, they cannot steal the money, the 1000.00 that belongs to Mr. Marshall as of 3/6/25.

The Defendant#1 terminated the agreement by letter dated 12/6/24. In Exhibit 101, para 3,  they claimed that they have established a "Reserve Account." In Exhibit 107, para 1,  they again refer to the "Reserve Account." A reserve account would be similar to an escrow account.  Therefore, after terminating the contract on 12/6/24 (Exhibit101) the assumed the role and title of an escrow agent. Breathes there a lawyer who can claim that the escrow agent is devoid of fiduciary duties. Therefore, they owed and still owe a fiduciary duty to explain and document their records to prove where the money went.

Defendants are creating false information about the charge backs and false information about the refunds allegedly made to the customers who never complained to Mr. Marshall in the first instance.

Respectfully Submitted,

**Allan K. Marshall**

December 16, 2025          Allan K. Marshall, Plaintiff

5